S02G1882. THOMPSON v. THE STATE.
(583 SE2d 14)

HUNSTEIN, Justice.

We granted certiorari from the Court of Appeals' opinion in *Thompson v. State*, 256 Ga. App. 776 (9) (569 SE2d 884) (2002), to address whether the trial court properly considered Henry L. Thompson's three prior habitual violator convictions in aggravation of his sentence. Because the State conceded at the sentencing hearing that the convictions could not be used in aggravation because they were uncounseled and the transcript establishes affirmatively that the trial court nevertheless used the convictions to determine the length of Thompson's sentence, we hold that the Court of Appeals erred by affirming the trial court's ruling.

Thompson was convicted of violating OCGA § 40-5-58 (c) (1), driving a motor vehicle after having been declared an habitual violator and receiving notice that his driver's license had been revoked. Because the conviction occurred before the expiration of five years from the revocation, he was subject to punishment by a fine of not less than $750 or by imprisonment for not less than one nor more than five years or both. Id. At the sentencing phase of the proceedings, the State introduced certified copies of three prior habitual violator cases in which Thompson entered guilty pleas. At the time the three HV convictions were tendered, the prosecutor informed the court that the pleas were being introduced

> [n]ot for purposes of imposing a recidivist sentencing, Your Honor, simply because he was not represented by counsel at these particular pleas, but we do feel that they would be admissible for the Court, just as a presentence investigation would . . . not to use to enhance the sentence but to use to determine how much of the sentence should be probated.

Counsel for Thompson objected, arguing that the uncounseled HV convictions, "should not be considered by the Court for any purpose at sentencing." Although the trial court questioned defense counsel on whether the convictions were obtained in violation of Thompson's right to counsel,[1] the trial court made no finding on that issue, but instead explained its decision to allow the State to file the three prior HV convictions solely on the basis that the convictions were certified. Thereafter, in entering the sentence, the court stated:

> All these previous habitual violator offenses have been disposed of by probation apparently. But there comes a time when these repeated habitual violator offenses have to be strongly addressed. And perhaps they should have been more strongly addressed before. But at any rate in view of the fact that there are three previous convictions and here we are with another fourth conviction for violation of the Georgia Habitual Violator Act, I think it's incumbent upon the Court to impose a sentence that is commensurate with the offense and I hereby impose a sentence of five years with three years to serve . . . .

Thus, although the State offered the prior HV guilty pleas solely for the trial court's consideration in determining the amount of probation Thompson should receive, i.e., as a type of presentence investigation, see OCGA § 42-8-29, the trial court did not consider the convictions in that light but instead affirmatively used the convictions in fixing the length of Thompson's sentence. See *McDuffie v. Jones*, 248 Ga. 544 (3) (283 SE2d 601) (1981) (presentence investigation reports cannot be used in aggravation to determine length of sentence but may be used only in determining amount of sentence to probate); compare *Williams v. State*, 165 Ga. App. 553 (3) (301 SE2d 908) (1983) (nothing in record indicated evidence improperly used to extend length of sentence).[2]

In addressing Thompson's enumeration that the trial court erred by considering the three prior HV convictions during sentencing, the Court of Appeals followed this Court's holding in *Nash v. State*, 271

---

[1] The transcript reveals that the trial court asked defense counsel, "You're not representing to the Court that he was not made aware of his right to counsel are you?" Counsel replied, "Well, Your Honor, if he couldn't afford counsel they were supposed to get him one and they didn't. And there's no evidence in the record that he knowingly and intelligently and voluntarily waived his right to counsel nor is there any evidence in those records that he in fact had counsel. We would ask the Court not to consider them for any purpose."

[2] Because the trial court here clearly considered Thompson's guilty plea convictions to determine the length of Thompson's sentence, we do not now address the issue whether uncounseled guilty pleas may properly be considered for the purpose of deciding whether to suspend or probate all or part of a sentence to be imposed in a case.

Ga. 281 (519 SE2d 893) (1999). *Nash* held that in a presentence hearing where the State proffers a guilty plea as evidence in aggravation and proves both the existence of the plea and that the defendant was represented by counsel when the plea was taken, there is a presumption that the plea was handled properly (a "presumption of regularity"). Id. at 285. Upon this showing by the State, the burden then shifts to the defendant collaterally attacking the plea to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Id. After conducting its own review of the guilty pleas adduced by the State against Thompson,[3] the Court of Appeals concluded that the State carried its burden of proof and that the prior HV guilty pleas were entitled to the presumption of regularity, shifting the burden of proof to Thompson. Finding that Thompson had "not shown or even alleged, below or on appeal, any infringement or irregularity in the taking of the pleas," *Thompson*, supra, 256 Ga. App. at 783, the Court of Appeals held that Thompson failed to carry his burden of proof.

We need not reach Thompson's argument that the presumption of regularity in *Nash* should not apply when a guilty plea is collaterally attacked on the basis of a *Gideon v. Wainwright* violation,[4] because even assuming, arguendo, that the *Nash* analysis is applicable, the Court of Appeals factually erred in its application. The Court of Appeals failed to take into consideration the fact that the State at the sentencing hearing had expressly conceded that all three of Thompson's prior guilty plea convictions it sought to introduce could not be used for sentencing[5] and that the trial court never rejected the State's assessment of the pleas or defense counsel's assertion that there was no evidence Thompson knowingly and intelligently waived his right to counsel. Moreover, even if the Court of Appeals were cor-

---

[3] The Court of Appeals found that the documents in the record showed that Thompson signed forms in all three prior cases expressly indicating that he waived his right to be represented by an attorney. And, in the most recent prior offense, the trial court also entered an order, signed by the judge and Thompson, indicating in more detail that Thompson understood his rights, including the right to be represented by counsel, that Thompson knowingly and voluntarily waived that right, and that the trial court ascertained that Thompson understood and intelligently and voluntarily waived the right to counsel. *Thompson v. State*, supra, 256 Ga. App. at 782-783. We do not address whether the Court of Appeals was authorized to conduct such a de novo review of the proffered pleas.

[4] *Gideon v. Wainwright*, 372 U. S. 335 (83 SC 792, 9 LE2d 799) (1963).

[5] Although the fact that a defendant was "not represented by counsel" could mean that the defendant had chosen instead to knowingly and voluntarily waive his right to counsel, we cannot assign this meaning to the State's concession in Thompson's case. The prosecutor's statement regarding the uncounseled nature of the guilty pleas must be read in context with his concession that this lack of representation meant the pleas could not be admitted to aggravate Thompson's sentence, i.e., that the pleas were rendered unusable due to the lack of legal representation.

rect in concluding that the certified convictions were entitled to a presumption of regularity, see footnote 3, supra, we do not agree with the Court of Appeals that under the factual circumstances in this case Thompson was required to produce additional affirmative evidence to show his right to counsel was infringed in the taking of those pleas. Thompson carried his burden of "produc[ing] some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea," *Nash*, supra, 271 Ga. at 285, when the prosecutor himself acknowledged that the pleas could not properly be used for that very reason.[6]

Accordingly, the Court of Appeals erred when it upheld the trial court's consideration of Thompson's three prior HV convictions in aggravation of his sentence. The case is therefore reversed with direction that the Court of Appeals remand it to the trial court for resentencing.

*Judgment reversed. All the Justices concur, except Carley, J., who dissents.*

CARLEY, Justice, dissenting.

I respectfully submit that the majority erroneously bases its decision entirely on a misreading of the State's "concession" regarding Thompson's prior habitual violator convictions and on a misunderstanding of the trial court's statement with respect to its use of those convictions.

The prosecutor did not concede that the previous convictions could not be considered at all in the setting of the sentence in this case. Instead, he contended that those convictions were admissible for the purpose of determining how much of the sentence should be probated. Indeed, prior convictions are admissible for that purpose if they are constitutionally valid even if they cannot be used to lengthen a subsequent sentence. *Stillwell v. State*, 161 Ga. App. 230, 232 (288 SE2d 295) (1982). See also *Dotson v. State*, 179 Ga. App. 233, 234 (3) (345 SE2d 871) (1986). If, on the other hand, prior convictions are constitutionally invalid due to the denial of assistance of counsel, they clearly are not admissible even in determining the amount of probation. *Stillwell v. State*, supra; *People v. McIntosh*, 695 P2d 795, 798 (Colo. App. 1985). Therefore, the Assistant District Attorney could not have meant that Thompson was denied his constitutional right to counsel during the guilty pleas which resulted in the

---

[6] Although after a defendant presents evidence sufficient to indicate a constitutional infirmity exists, the burden shifts back to the State, which may then establish the validity of the conviction by introducing a transcript of the taking of the guilty plea or other evidence by which the trial court may determine that the guilty plea was informed and voluntary, *Nash*, supra, 271 Ga. at 285, no such transcript was introduced at Thompson's sentencing hearing.

prior habitual violator convictions.

Furthermore, the context of the entire colloquy shows that counsel for the State did not admit that there was a constitutional deprivation of the right to counsel with respect to the guilty pleas. The trial court clearly did not understand the prosecutor's concession in that way because it questioned defense counsel as to whether he was contending that Thompson was not aware of his right to counsel. Thompson's lawyer responded that there was no evidence that Thompson knowingly, intelligently, and voluntarily waived his right to counsel. Thus, the trial court's ensuing reliance on the certification of the convictions can be taken to mean only that Thompson's written waivers of the right to an attorney constituted admissible evidence of the waiver. Contrary to defense counsel's assertion, the only evidence which was absent was any rebuttal by the defendant of the written waivers of counsel.

Notwithstanding the conclusory analysis of the majority, nothing in the trial court's oral ruling during the sentencing hearing indicates that it considered the prior convictions in fixing the length of Thompson's sentence. See *Williams v. State*, 165 Ga. App. 553, 554 (3) (301 SE2d 908) (1983). To the contrary, the trial court wanted to impose a sentence which would be stronger than was the probation of the entirety of the three previous sentences. The length of each of those prior sentences was five years. In making a stronger sentencing decision, the trial court could not and did not use the previous convictions to lengthen the sentence beyond five years. OCGA § 40-5-58 (c) (providing for a maximum of five years imprisonment). Thus, the trial court utilized the convictions in deciding to probate only a portion of the current five-year sentence and thereby to strengthen it beyond the prior sentences in the sole way which the law permitted. The trial court's oral ruling can be read only to mean that, after reviewing the previous habitual offender convictions, it would not consider giving Thompson yet another fully probated sentence. See *Williams v. State*, supra. Accordingly, the trial court's ruling, as well as its previous comments, show that it understood that the prosecutor was requesting consideration of the prior convictions in determining the amount of probation and that he was not admitting to the trial court that Thompson had ever been deprived of his constitutional right to counsel. Moreover, even if the assistant district attorney did concede the existence of such a constitutional deprivation, the trial court was not bound by that concession. *Young v. State*, 214 Ga. App. 585, 586 (448 SE2d 477) (1994).

Through its erroneous construction of the prosecutor's concession, the ensuing colloquy and the trial court ruling, the majority has failed to answer the question we asked when we granted certiorari in this case. Thompson contends that, under the federal and state con-

stitutional guarantees of the right to counsel, the presumption of regularity in *Parke v. Raley*, 506 U. S. 20 (113 SC 517, 121 LE2d 391) (1992) and *Nash v. State*, 271 Ga. 281 (519 SE2d 893) (1999) should not apply when a guilty plea is collaterally attacked on the basis of a denial of counsel to an indigent defendant in violation of *Gideon v. Wainwright,* 372 U. S. 335 (83 SC 792, 9 LE2d 799) (1963). However, both state and federal courts have consistently and repeatedly applied *Parke* in placing on the defendant at least some burden of proving a *Gideon* violation in order to make a collateral attack on a prior conviction. *United States v. McVay*, 32 Fed. Appx. 661, 664 (II) (A) (4th Cir. 2002); *Cuppett v. Duckworth*, 8 F3d 1132, 1137-1138 (II) (7th Cir. 1993); *State v. Okland*, 941 P2d 431, 434-436 (Mont. 1997); *State v. Patterson*, 939 P2d 909 (Kan. 1997); *State v. Brown*, 676 A2d 350, 355 (IV) (Vt. 1996). Furthermore, this Court has already held that the presumption of regularity applies when the State carries its initial burden of proving the existence of the prior guilty pleas and that the defendant either was represented by counsel or waived the right to counsel "by adducing 'a docket entry or other affirmative statement'" to that effect. *Nash v. State*, supra at 285. Because the record shows affirmative waivers of the right to counsel in each prior guilty plea, and because Thompson did not offer any evidence whatever in rebuttal, the Court of Appeals correctly held that his "mere naked assertion that the earlier pleas were constitutionally infirm is simply not enough to prohibit the consideration of the prior convictions. [Cits.]" *Thompson v. State*, 256 Ga. App. 776, 783 (9) (569 SE2d 884) (2002). Accordingly, I dissent to the reversal of the Court of Appeals' judgment and to the remand of this case for resentencing.

DECIDED JUNE 30, 2003.

*Kevin R. Gough*, for appellant.
*Stephen D. Kelley, District Attorney, Charles K. Higgins, Gregory C. Perry, Assistant District Attorneys*, for appellee.